## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **JAMES R. SANDLIN and** | ) | **Case No. 10-00048-TOM-13** |
| **JAN H. SANDLIN** | ) | |
| Debtors. | ) | |

| | | |
|---|---|---|
| **JAMES R. SANDLIN and** | ) | |
| **JAN H. SANDLIN, individually and on** | ) | |
| **behalf of all other similarly situated** | ) | |
| **Ameriquest Mortgage Company, Inc.** | ) | |
| **Mortgagors,** | ) | |
| | ) | |
| Plaintiffs, | ) | **A.P. No. 08-00191-TOM-13** |
| vs. | ) | |
| | ) | |
| **AMERIQUEST MORTGAGE CO., INC.,** | ) | |
| **AMC MORTGAGE SERVICES, INC.** | ) | |
| **and Citi Residential Lending,** | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION DENYING MOTION FOR CLASS CERTIFICATION

This matter is before the Court on Mr. And Mrs. James Sandlins' (hereinafter, "Debtors")

Plaintiffs' Amended Motion For Class Certification (A.P. No. 190)[1](hereinafter, "Debtors'

Amended Motion").  The Court has also considered Plaintiffs' Amended Brief In Support Of

Class Certification (A.P. No. 191)(hereinafter, "Debtors' Amended Brief"), Ameriquest

Mortgage Co. And AMC Mortgage Services, Inc.'s (hereinafter "Defendants") Memorandum In

Opposition To Plaintiffs' Amended Motion For Class Certification (A.P. No. 194)(hereinafter,

---

[1]References to pleadings in the Debtors' 2006 chapter 13 bankruptcy case, 06-03792-TOM13 are referred to as "Proceeding No.," while references to pleadings in the adversary proceeding are referred as "A.P. No."

"Defendants' Memorandum"), Plaintiffs' Response To Defendants' Opposition To Certification

(A.P. No. 199)(hereinafter, "Debtors' Response"), and Defendants' Supplemental Response In

Opposition To Plaintiffs' Amended Motion For Class Certification (A.P. No. 216)(hereinafter,

"Defendants' Supplemental Response").  Appearing at the June 14, 2010 (A.P. Nos. 211, 212),

and August 2, 2010 (A.P. No. 220), hearings on this matter were: Lange Clark and Robert C.

Keller, attorneys for Debtors, and Michael Leo Hall, Steve Bumgarner, and Jennifer Zeimann,

attorneys for Defendants.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 157, 1334 and the

District Court's General Order Of Reference Dated July 16, 1984, As Amended July 17, 1984.[2]

This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C.

§ 157(b)(2)(A) and (B).[3]  This Court has considered the pleadings, testimony, evidence,

arguments of counsel, and the law and finds and concludes as follows.[4]

---

[2]The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued
by the United States District Court for the Northern District of Alabama provides:

The general order of reference entered July 16, 1984 is hereby amended to add that there
be hereby referred to the Bankruptcy Judges for this district all cases, and matters and
proceedings in cases, under the Bankruptcy Act.

[3]28 U.S.C. §157(b)(2)(A) provides:

(b)(2)Core proceedings include, but are not limited to–
(A) matters concerning the administration of the estate[.]
(B) allowance or disallowance of claims against the estate or exemptions from property
of the estate, and estimation of claims or interests for the purposes of confirming a plan
 under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent
or unliquidated personal injury tort or wrongful death claims against the estate for
purposes of distribution in a case under title 11[.]

[4]This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant
to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy
pursuant to Federal Rule of Bankruptcy Procedure 7052.

# I.  FINDINGS OF FACT[5]

The Debtors obtained a mortgage loan for the refinancing of their home in Trussville from Defendant Ameriquest Mortgage Company, Inc. in the amount of $70,200.00 on March 31, 2006.  Thereafter, on October 4, 2006, they filed a chapter 13 case with this Court.  At the time that case was filed, the Debtors were behind in their regular monthly mortgage payments to Defendants. On November 2, 2006, Defendants filed a Proof of Claim for the loan balance of $71,429.27, which included the pre-petition arrearage that had accrued in the amount of $1,323.42 (two missed payments, September and October, 2006, $615.54 each) plus late charges of $92.34.  The Debtors' Plan, which was confirmed on December 28, 2006, proposed to pay the regular monthly mortgage payments direct to Defendants each month as they came due and to pay the pre-petition arrearage through the payments made to the Trustee, from which the Trustee was to pay $50.00 per month on this arrearage.  Between the petition date and the date of confirmation, Defendants assessed bankruptcy attorney fees and costs in the amount of $375.00 and property inspection fees in the amount of $30.00 to Debtors' mortgage account.  These charges were not included, disclosed or reflected in the Proof of Claim filed by Defendants.  That non-disclosure of fees and charges is the underlying basis for this Adversary Proceeding.

These post-petition, pre-confirmation fees were later disclosed to Debtors and this Court on or about January 22, 2007, the date on which Defendants filed an affidavit outlining these charges in support of their January 8, 2007, Motion For Relief From Stay.  Defendants' Motion

---

[5]Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files.  *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

For Relief From Stay was filed as a result of Debtors' failure to make their mortgage payments per the confirmed plan. On January 12, 2007, Debtors filed a Motion To Sell Property Of The Estate free and clear of all existing liens through a private sale. The Motion to Sell indicated that the Plaintiffs had a contract to sell their home for $109,000.00, which would pay off the Mortgage. Ameriquest's response requested that the Court ensure that any proceeds from the sale of the Property be used to pay the Mortgage in full. On February 20, 2007, the Department of Housing and Urban Development (hereinafter, "HUD") filed an objection to the Motion to Sell, alleging HUD had a valid mortgage on the Property and requesting that HUD's mortgage be paid in full from any proceeds from a sale of the Property. Following a hearing before the Court on March 8, 2007, the parties settled their lien disputes through mediation with Mr. J. Thomas Corbett, the Chief Deputy Bankruptcy Administrator.

On April 5, 2007, the Court held a hearing on the Motion to Sell and the Motion for Relief. At this hearing, the parties reported that the settlement reached in mediation between the Plaintiffs, Ameriquest and HUD had fallen through. Mr. Sandlin testified at this hearing that the Plaintiffs had intended to sell their home to his brother, Mr. Bruce Sandlin. Although the sales contract indicated that his brother would purchase the home for $109,000.00, he had only received approved financing for $98,500.00, and the Plaintiffs agreed to sell it to him for this amount. However, due to the time delay from mediation, the lender for Mr. Bruce Sandlin withdrew the financing. Mr. Sandlin testified the Property appraised for $130,000.00, and they currently had it listed with an agent on the market for $129,000.00. Mr. Sandlin further indicated there was a potential buyer willing to pay this amount. The parties then requested a ruling on the Motion.

4

The Court denied Defendants' Motion For Relief From Stay and granted Debtors' Motion to Sell on the condition that Debtors sell their home for $129,900.00 on or before May 18, 2007. Pursuant to this Court's Order entered April 17, 2007, in the event Debtors failed to sell their home on or before May 18, 2007, Defendants were granted relief from the automatic stay effective May 21, 2007.

Debtors were unable to sell their home on or before May 18, 2007; therefore, pursuant to this Court's Order, the automatic stay as to Defendants lifted effective May 21, 2007. Subsequently, however, Defendants refrained from taking any action, which allowed Debtors to sell their home through a private sale held on June 29, 2007, that satisfied Defendants' lien. This lien included the $405.00 in post-petition, pre-confirmation fees that were not disclosed to Debtors or this Court prior to the confirmation of Debtors' chapter 13 bankruptcy plan. On July 29, 2008, Debtors filed this adversary proceeding against Defendants, asserting causes of action arising out of Defendants' failure to disclose the $405.00 in post-petition, pre-confirmation fees prior to confirmation.

On March 13, 2009, Defendants filed a Motion For Summary Judgment (A.P. No. 142), in which Defendants asserted that they were not under any duty to disclose the disputed fees prior to confirmation. On April 8, 2010, the Court denied in part Defendants' Motion For Summary Judgment, holding that Defendants did have a duty under 11 U.S.C. § 506(b) to disclose the disputed fees prior to confirmation. Subsequently, the Court held hearings on June 14, 2010, and August 2, 2010, to consider Plaintiffs' Amended Motion For Class Certification arguments.

During the June 14, 2010, hearing on this motion for class certification, Debtors' counsel called Mr. Sandlin, Debtors' primary witness, and Mrs. Sandlin to provide testimony in support

of Debtor's Amended Motion.  Defendants called Judge William Houston Brown to testify in opposition to class certification.  During the closing arguments held on August 2, 2010, Debtors' counsel, Mr. Lange Clark noted that Debtors' counsel are adequate representatives in this case because he himself has participated in 15-20 class action lawsuits as class counsel.

## A.      Mr. Sandlin's Testimony

Mr. Sandlin testified that he and his wife are currently residing in Odenville, Alabama.  It appears that they have purchased another home that is financed through an individual, that the mortgage is $120,650.00, and that there is a monthly payment of $733.36.

On direct examination at the certification hearing, Mr. Sandlin testified that he understood this lawsuit to be about undisclosed charges in the approximate amount of $400.00 that were added to his chapter 13 case.  He further attempted to explain that he thought it was about charges added after his case was "set up" and before it was "closed".  He said that he understood a class action to be about a large group of people that had the same thing happen to them.  In this case, he said that it was about other people that also had charges added to their cases before confirmation.  According to his testimony, he understood that a class representative would be at depositions, have meetings with the attorneys, and attend mediations.  He also testified that although he personally was not able to take care of the costs associated with a class action, his attorneys were handling and taking care of the costs.  Mr. Sandlin appeared to struggle to answer many of these basic questions about the nature of the lawsuit or adversary proceeding.  Based on long pauses that occurred after questions were asked and before Mr. Sandlin responded, as well as his hesitation in answering many of the questions even on direct examination, the Court concludes that he was unsure or uncomfortable as a witness.

6

Also, on cross examination, Mr. Sandlin was asked about the number of prior bankruptcy cases he filed. He seemed unable to say for sure but believed it may have been five or more. From court records, it appears the Debtors have filed a total of five cases: 95-2836-BGC-13; 00-6368-TOM-13; 03-4777-TOM-7; 06-3792-TOM-13 and this current case 10-48-TOM-13. The Debtors' prior chapter 13 case was filed on October 4, 2006, and was dismissed on December 23, 2009, because they were unable to make the plan payments to the Chapter 13 Trustee. This Adversary Proceeding that is before the Court was filed while the prior case was pending, but this Court has retained jurisdiction because the Debtors still have a chapter 13 case before this Court.[6]

Mr. Sandlin admitted that they were unable to make their regular monthly mortgage payments on their home during the 06-3792 chapter 13 case. As a result, Defendants filed a motion for relief from stay in January 2007. At the time the motion was filed, Defendants alleged that the arrearage due from the date of the filing of the case was $2,313.18, excluding any fees or costs. Further, Mr. Sandlin acknowledged that while that motion was pending and even after the Court ruled on the motion, the direct monthly mortgage payments were not made and that in fact they did not make the payments from September of 2006 until the sale of the house occurred in June of 2007. In addition, the Debtors fell behind several times in their payments to the Chapter 13 Trustee, which resulted in numerous motions from the Trustee to dismiss their case for a default. As a result of not paying the Trustee, the Defendants was not able to receive their "cure" payments; in other words, the arrearage that existed at the time of the filing of the 2006 case was not being timely paid by the Trustee because the Debtors were not timely paying

---

[6]*See infra* note 18.

Case 10-00048-TOM13   Doc 65   Filed 10/21/10   Entered 10/21/10 15:24:30   Desc Main
Document      Page 7 of 22

the Trustee.

On cross examination Mr. Sandlin was asked about the details of the sale of their home in Trussville that occurred in the prior chapter 13 case. While Mr. Sandlin knew the home was sold, his testimony regarding the dates various things occurred that related to the sale and other facts about events leading up to the sale were somewhat confused and convoluted. The Debtors filed a motion to sell their home in Trussville in January of 2007 for $109,000. At the initial hearing HUD appeared to object to the sale because the proceeds would be insufficient to pay both HUD and Ameriquest. Mr. Sandlin answered on cross examination that the fees and charges were paid at the sale even though they were added after December 28, 2006 (date of entry of order of Confirmation). Some of this testimony from Mr. Sandlin was inaccurate or confused. It is unclear why Mr. Sandlin noted that the charges were paid even though they were added after December 28, 2006. Presumably since that was the date of entry of the Order Confirming the Plan he felt it was a crucial date, but it does not appear to the Court that he understood why that date might be important. Further, Mr. Sandlin testified that he was unaware of the HUD lien on the Trussville home until disclosed to him at a mediation session that occurred after the sale. However, as noted, the mediation was ordered and concluded before the sale of the home and before the closing of the sale on the home. It appears that Mr. Sandlin was confused on his dates or the timing on these events.

**B.      Mrs. Sandlin's Testimony**

Mrs. Sandlin also testified at the hearing, but on limited issues. She said she called the mortgage company to question the amount due at closing. She also responded that she understood the general nature of a class action and the duties of a class representative. On cross

8

examination, she indicated she did not know anyone with the same claim. Apparently she contacted the mortgage company on numerous occasions to discuss the availability of a forbearance agreement. She confirmed that although they did not agree with all of the charges, they sold their home to a third party and that all fees were paid as a result of the sale.

## C.     Judge William Houston Brown's Testimony

The Defendants' primary witness at the certification hearing was William Houston Brown, a retired Bankruptcy Judge from the Western District of Tennessee (hereinafter, "Judge Brown"). Judge Brown sat in a district that handled a large number of chapter 13 cases. While on the Bench he was a frequent speaker and lecturer both locally and nationally for educational programs for attorneys and judges. He continues to do these speaking engagements. He has and continues to author articles, forms, books, and treatises. To stay current regarding his speaking and writing responsibilities, Judge Brown has and does stay current on statutory and procedural changes as well as familiarizing himself with local rules and forms and changes to them. This knowledge and familiarity were utilized in the preparation of his report (Defendants' Ex. 45) and his testimony for this hearing. In addition he reviewed the pleadings filed and was present during most of the testimony.

Judge Brown described how in many federal judicial districts, a "local culture" has developed particularly in chapter 13 cases that often dictates or impacts how cases are handled by the attorneys, the trustees and the judges. He also described in detail proposed changes to Rules 3001 and 3002 that could have a significant impact on the filing of claims in bankruptcy by mortgage companies. He also described in detail how the regular monthly mortgage payments due on a mortgage and the past due amount, the arrearage, are handled differently in different

districts across the country. From his testimony it is clear that he is familiar with different practices and forms used in different parts of the country to deal with mortgage issues that arise particularly in chapter 13 cases. He suggested that there is a need for a uniform national practice. Finally, he was asked whether it is a regular occurrence for debtors to sell their home during a chapter 13 case, and he responded that it was not.

In addition to the findings of fact set forth herein, the Court hereby adopts as further findings all facts set forth in this Court's summary judgment memorandum opinion dated April 8, 2010 (A.P. No.177). In that memorandum, this Court ruled that Defendants had a duty under 11 U.S.C. § 506(b) to disclose, prior to confirmation, the $405.00 in post-petition, pre-confirmation fees at issue in this case.[7] Having concluded that Defendants had a duty under § 506(b) to disclose the disputed fees prior to confirmation, this Court held hearings on June 14, 2010, and August 2, 2010, to determine whether Debtors' Amended Motion For Class Certification should be granted.

## II. CONCLUSIONS OF LAW

**A.     Federal Rule Of Bankruptcy Procedure 7023**

Certification of a class is governed by Rule 7023 of the Federal Rules of Bankruptcy Procedure, which incorporates Rule 23 of the Federal Rules of Civil Procedure.[8] Pursuant to Rule 23(a) of the Federal Rules of Civil Procedure, a class may only be certified if:

"1.     The class is so numerous that joinder of all members is impracticable (numerosity

---

[7]The Court did not hold that 11 U.S.C. § 506(b) provides a private right of action to Debtors; rather, this Court held that it has the authority under 11 U.S.C. § 105 to fashion a remedy to cure Defendants' failure to comply with 11 U.S.C. § 506(b).

[8]Federal Rule of Bankruptcy Procedure 7023 provides that "Rule 23 F. R. Civ. P. applies in adversary proceedings."

     requirement);

2.  There are questions of law or fact common to the class (commonality requirement);

3.  The claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality requirement); and

4.  The representative parties will fairly and adequately protect the interests of the class (adequacy requirement)."

*In re Noletto*, 281 B.R. 36, 41 (Bankr. S.D. Ala. 2000)(citing *In re FIRSTPLUS Fin., Inc.*, 248 B.R. 60, 74 (Bankr. N.D. Tex. 2000)).  If all four requirements are met, the class must then fit into one of the three class types listed under Rule 23(b) in order to be certified.[9]  Debtors assert that the requirements of Rule 23(a) are satisfied and that their proposed class falls within the framework of Rule 23(b)(3).

**1.**  **Rule 23(a)**

---

[9]Federal Rule of Civil Procedure 23(b):

"(1) prosecuting separate actions by or against individual class members would create risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include: (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

Case 10-00048-TOM13    Doc 65    Filed 10/21/10    Entered 10/21/10 15:24:30    Desc Main
Document      Page 11 of 22

**(a)    Typicality - Rule 23(a)(3)[10]**

For Debtors to satisfy the typicality requirement, they must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Generally, typicality of claims is satisfied if the claims of the class representative and the claims of the proposed class members have the "'same essential characteristics.'" *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985)(quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983), *overruled on other grounds by Green v. Mansour*, 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985)). In *Kornberg v. Carnival Cruise Line, Inc.*, the Eleventh Circuit established the standard for evaluating typicality:

> A class representative's claims or defenses must be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). In other words, there must be a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class. A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory. Typicality, however, does not require identical claims or defenses. A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class.

741 F.2d 1332, 1337 (11th Cir. 1984), *cert denied*, 470 U.S. 1004, 105 S.Ct. 1357, 84 L.Ed.2d 379 (1985).

In the present case, Debtors assert that the typicality requirement is satisfied because 1) the proposed class members and they have the same claim against Defendants: Defendants

---

[10]As noted above, all four of the Rule 23(a) requirements - 23(a)(1)-(4) - must be satisfied for this Court to certify a class. The Court will not, however, address these in chronological order.

12

assessed post-petition, pre-confirmation fees to their accounts without disclosing them prior to confirmation pursuant to § 506(b); and 2) each of the putative class members' claims arises out of Defendants' pattern, practice and policy of not disclosing post-petition, pre-confirmation fees. With respect to any factual variations that exist between Debtors and the other proposed members of the class, Debtors assert that these are irrelevant and immaterial because they do not destroy the similarity of the claim they and the other proposed class members have against Defendants. Defendants contend that the typicality requirement is not satisfied in this case because Debtors' factual position is markedly different from that of the proposed class members. In support of this contention, Defendants point out that Debtors sold their previous home during their last chapter 13 bankruptcy case, which is, according to Judge William Houston Brown's testimony, an "infrequent event for a Chapter 13 debtor." *See* Defendants' Ex. 45, at 6. Additionally, Defendants note that typicality does not exist in this case because of the existence of the unique defense of waiver available to Defendants against Debtors. Defendants assert that this defense is unique because the foregoing facts which gave rise to this defense are unique to the Debtors.

As noted in *Ross v. Bank South, N.A.*, 837 F.2d 982, 990-91 (11th Cir. 1988), *vacated on other grounds*, 848 F.2d 1132 (11th Cir. 1988), typicality may be destroyed by the existence of a unique defense "if it will distract the named plaintiff's attention from the issues common to the class." *See also*, *Colomar v. Mercy Hospital, Inc.*, 242 F.R.D. 671, 678 (S.D. Fla. 2007) ("typicality may be destroyed by the existence of unique defenses that would preoccupy the defendant to the detriment of the interests of absent class members"); *Boca Raton Cmty Hosp., Inc. v. Tenet Healthcare*, 238 F.R.D. 679, 694 (S.D. Fla. 2006)("'[t]he existence of a unique

13

defense is relevant to the certification decision'"); *In re HealthSouth Corp. Secs. Litig.*, 213 F.R.D. 447, 458-60 (N.D. Ala. 2003)(typicality not established where Plaintiffs were, due to their knowledge of certain material facts, subject to a defense that was unique to them). A unique defense will sufficiently distract Debtors' attention if it is "'likely to usurp a significant portion of the litigant's time and energy.'" *Ross*, 837 F.2d at 991 (quoting *McNichols v. Loeb Rhoades & Co.*, 97 F.R.D. 331, 334 (N.D. Ill. 1982)). Whether or not a unique defense will sufficiently distract Debtors' attention is a question that is "left to the sound discretion" of this Court. *Id.* (citing *Griffin v. Carlin*, 755 F.2d1516, 1531 (11th Cir. 1985); *Walker v. Jim Dandy Co.*, 747 F.2d 1360, 1363 (11th Cir. 1984); *McKinnon v. Talladega County*, 745 F.2d 1360, 1365 (11th Cir. 1984)).

In this case, the defense of waiver is still unresolved because this Court concluded in its opinion dated April 8, 2010, that there are genuine issues of material fact as to whether Debtors waived their right to contest the disputed fees when they paid their outstanding mortgage balance in full in June 2007, which included the disputed fees. Additionally, this potentially viable defense is arguably unique[11] to Debtors since it arose out of the sale of Debtors' primary residence during the administration of their chapter 13 case, which is, per Judge Brown's testimony and this Court's opinion, an unusual occurrence for a chapter 13 debtor that renders

_____

[11]Even if waiver is not a unique defense and it is arguably available to Defendants against wide range of potential class members, then Debtors' class is not certifiable pursuant to Rule 23(b)(3) due to the individualized questions of fact and law this Court would have to spend a considerable amount of time addressing since waiver is governed by state law, as opposed to uniform federal law, and turns on individualized facts. *See, e.g.*, *In re Wilborn*, 609 F.3d 748, 755-757 (5th Cir. 2010)(certification of class improper where waiver, *inter alia*, was a potentially viable defense to numerous of the proposed class members' claims).

14

the Debtors' factual position markedly different from that of the other proposed class members. Furthermore, Defendants' conduct in this case indicates that they plan to vigorously pursue the adjudication of this defense, which will require the parties and this Court to review and apply Alabama state law.[12]  Therefore, in addition to being unique to Debtors, the defense of waiver may divert a considerable amount of time and attention of the parties and the Court away from any issues that are common to the proposed class to the detriment of the putative class members. The Court finds that the typicality requirement is not satisfied in this case.

(b)    **Adequacy of Representation – Rule 23(a)(4)**

The adequacy of representation requirement "'encompasses two separate inquiries:  (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)(quoting *In re HealthSouth Corp. Secs. Litig.*, 213 F.R.D. at 460-61).  In *Kirkpatrick v. J.C. Bradford & Co.*, the Eleventh Circuit held and instructed that the adequacy of representation requirement is to be measured in the following ways:

> (1) "whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation;" (2) "whether plaintiffs have interests antagonistic to those of the rest of the class;" (3) whether the named plaintiffs "possess the personal characteristics and integrity necessary to fulfill the fiduciary role of class representative;" (4) whether the named plaintiffs have "demonstrated [s]ufficient participation in and awareness of the litigation;" and (5) whether the named plaintiffs are capable of funding the litigation.

---

[12]In addition, Alabama state law is applicable only to Alabama members of the Debtors' proposed nationwide class.

15

827 F.2d 718, 726-27 (11th Cir. 1987)(quoting *Griffin v. Carlin*, 755 F.2d 1516, 1532 (11th Cir. 1985); *McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 559-60 (5th Cir. 1981)).

(i)      **Adequacy of Debtors' Counsel**

Debtors' counsel argue that they are fully qualified and capable of prosecuting the proposed class action. In Debtors' Amended Brief, Debtors counsel assert that they have "substantial experience in the prosecution and successful resolution of complex class action litigation and bankruptcy matters, specifically including litigation on the exact same type of loan transactions at the heart of this case." *See* Debtors' Amended Brief, at 31. This assertion was expounded upon by Debtors' counsel, Mr. Lange Clark, during closing arguments when he stated that he had previously served as class counsel in 15-20 class action lawsuits. Additionally, Debtors' counsel asserted in Debtors' Amended Brief (1) that they have "vigorously pursued" this matter as evidenced by their prosecution of this case, (2) that they are "pursuing other mortgage servicing companies for similar violations" in other lawsuits[13], and (3) that they have the resources to continue the prosecution of this action. *See* Debtors' Amended Brief, at 31-32. In their Response, Debtors assert that the record of their prosecution of the claims in this case is evidence enough of their adequacy. *See* Debtors' Response, at 9.

The problem with Debtors' counsel's assertions is that they are unfortunately unsupported by evidence.[14] As noted in *Richardson v. Honda Mfg. of Alabama, LLC*, 635 F. Supp. 2d 1261,

---

[13]This Court is aware other similar lawsuits have been filed, some have been dismissed, and some of those are on appeal. One other case is still pending. Based on this Court's review, no other courts in this district have thus far certified a class action in a similar case filed by these attorneys.

[14]The Court notes that counsel for Defendants did not contest the adequacy of Debtors' counsel during oral arguments. However, as will be discussed *infra*, Debtors have the

16

1276 (N.D. Ala. 2009)(quoting *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980))[15],

"[s]tatements by counsel in briefs are not evidence."  Therefore, Debtors' counsel's unsupported

assertions regarding the adequacy of their counsel found in Debtors' Amended Brief and

Debtors' Response are not evidence.  As to the comment Mr. Lange Clark made during closing

arguments regarding his previous experience as class counsel, the Court first notes that

"[a]dequacy of counsel, like every other fact necessary for class certification, must be proved by

the plaintiff and proved with facts, not conclusions."  *Shelley v. AmSouth Bank*, No. 97-1170-

RV-C, 2000 U.S. Dist. LEXIS 11429, at *17 (S.D. Ala. July 24, 2000)(citing *Morrison v. Booth*,

763 F.2d 1366, 1371 (11th Cir. 1985) (plaintiffs "must prove more than bare allegations [to]

satisfy the requirements of Rule 23"); *Simon v. World Omni Leasing, Inc.*, 146 F.R.D. 197, 201

(S.D. Ala. 1992)(adequacy of counsel satisfied by affidavit which detailed counsel's class action

experience and expertise)).  Mr. Clark's statement was not supported by an affidavit or testimony

or any other form of evidence; therefore, this statement did not amount to evidence in support of

Debtors' counsel's contention that they are adequate counsel for the purpose of satisfying Rule

23(a)(4).

Second, the Court notes that Mr. Clark's assertion, which was the first statement made by

Debtors' counsel during the hearings on this matter for the purpose of proving that Debtors'

counsel are adequate, was made during closing arguments.  The Court cannot consider evidence

---

burden of proving that the adequacy requirement is satisfied; therefore, Defendants'
counsel's failure to contest the adequacy of Debtors' counsel during oral arguments does
not relieve Debtors of their burden of proof.
[15]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh
Circuit held that Fifth Circuit precedent set before October 1981 is binding in the
Eleventh Circuit.

that is presented for the first time during closing arguments. *See, e.g., Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1207 (9th Cir. 2002)(citing *United States v. Barron*, 575 F.2d 752, 758 (9th Cir. 1978); *U.S. v. Doyle*, 771 F.2d 250, 258 (7th Cir. 1985)(citing *United States v. Trapnell*, 638 F.2d 1016, 1025 (7th Cir. 1980)). Therefore, even if Mr. Clark's statement amounted to evidence, this Court could not consider it. Thus, Debtors' counsel have failed to prove that they have sufficient qualifications and experience to adequately represent the proposed class.[16]

**(ii)     Adequacy of Debtors As Class Representatives**

*Sufficiently Aware/Knowledgeable*

The Court is not persuaded that Debtors are sufficiently aware of this litigation to be adequate representatives of the proposed class. In addition to having "a working knowledge of the case," *Buford v. H & R Block, Inc.*, 168 F.R.D. 340, 353 (S.D. Ga. 1996), *aff'd sub nom*, *Jones v. H & R Block Tax Svcs.*, 117 F.3d 1433 (11th Cir. 1997), class representatives should be capable of "controlling" or "prosecuting" the litigation. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 497 (5th Cir. 2001), opinion on rehearing, 279 F.3d 313 (5th Cir. 2002). The Court does not expect Debtors to fully understand all of the legal theories present in this litigation; however, it does expect them to testify clearly, without any hesitation or uncertainty as to the facts of their own case. *See, e.g., Eslava v. Gulf Tel. Co.*, No. 04-00297-KD-B, 2007 WL 2298222, at *2-4 (S.D. Ala. 2007)(finding several of the proposed class representatives inadequate because they were unable to articulate basic information regarding the various claims

---

[16]The failure of Debtors' counsel to provide evidentiary support for their assertions is ultimately immaterial in view of this Court's conclusion that other requirements of Rule 23(a) have not been satisfied in this case.

at issue in the case).

During the hearing on this matter, Mr. Sandlin was the primary witness for Debtors, and he had considerable difficulty articulating what his claims are against Defendants. In fact, when asked what this litigation is about, Mr. Sandlin struggled to answer the question and ultimately was only able to note that it is about undisclosed charges that were added after his case was "set up" and before it was "closed;" he was not able to articulate that this litigation is about undisclosed charges that were assessed post-petition, pre-confirmation, which are basic terms that are of paramount significance in this litigation. Furthermore, Mr. Sandlin was unable to accurately testify as to the number of bankruptcy cases he and his wife have filed to date, which is a basic fact that Mr. Sandlin should have been able to recite. Additionally, Mr. Sandlin's testimony regarding the dates and details surrounding the sale of his previous home was confusing and in some respects erroneous. For example, Mr. Sandlin testified that he was not made aware of the HUD lien on his previous home until a mediation session that occurred after the sale of the Sandlins' previous home. However, the record in this case clearly shows this testimony is incorrect since the mediation session to which Mr. Sandlin referred occurred prior to April 5, 2007, months before the sale of Debtors' previous home. *See* Proceeding No. 67.

In view of Mr. Sandlin's inability to recall and recite basic facts surrounding this case without hesitation, and because Mr. Sandlin's testimony was, at times, confused and incorrect, the Court concludes that Mr. Sandlin is not sufficiently aware/knowledgeable of this case to adequately represent the proposed class.[17]

---

[17]The Court recognizes that Mrs. Sandlin also testified during the trial of this matter. However, Debtors' counsel relied primarily upon the testimony of Mr. Sandlin during

19

*Ability To Maintain Chapter 13 Bankruptcy Case*

This Court believes that in addition to being knowledgeable, putative class representatives in a bankruptcy class action must have a viable and feasible bankruptcy case.[18] Debtors have filed numerous bankruptcy cases, most of which have been unsuccessful.[19]  In fact, Debtors had case 06-03792-TOM13 pending at the time this adversary proceeding was filed, but that case was ultimately dismissed because Debtors were unable to maintain their chapter 13 payments.  In this bankruptcy case, likewise Debtors have been unable to make regular and consistent payments to the chapter 13 trustee despite the allegations they made in their Amended Motion To Extend Stay As To All Creditors (Case No. 10-00048-TOM13, Proceeding No. 11) and the proffer of their testimony at the hearing on this Motion.[20]

---

this trial.

[18]The Court believes this is necessary because there are limits to this Court's discretion to retain jurisdiction over an adversary proceeding if the debtor is unable to stay in a main bankruptcy case.  The Court has thus far retained jurisdiction over this adversary proceeding pursuant to the Eleventh Circuit's decision in *Fidelity & Deposit Co. v. Morris (In re Morris)*, 950 F.2d 1531, 1535 (11th Cir. 1992), despite the fact that the main case that was pending when the underlying facts occurred and when this action was filed has been dismissed.  If these Debtors are unable to maintain a main bankruptcy case, there is a risk that the Court would at some point refuse to continue to retain jurisdiction of the adversary proceeding which would mean a dismissal of this action, which would be prejudicial to the other putative class members' claims.  The Court also notes that Debtors no longer have a mortgage held by Defendants.

[19]The Court characterizes a bankruptcy case as unsuccessful if it is ultimately dismissed without a discharge.  The Court does, however, recognize that sometimes certain goals or results may be achieved in a bankruptcy case even if a discharge is not entered.

[20]As a result of Debtors' failure to consistently make their monthly payments, the Chapter 13 Trustee was forced to file a Motion To Modify Plan After Confirmation (Case No. 10-00048-TOM13, Proceeding No. 61), which was granted by this Court (Case No. 10-00048-TOM13, Proceeding No. 62), to increase monthly payments from $650.00 per month to $812.00 per month in order for the case to be paid-in-full within sixty months.  The Debtors were unable to make the payments of $913.00 per month in the last case, so it is unlikely that Debtors will be able to consistently make the increased

20

The Court also notes that Debtors' previous home was subject to two mortgages, one of which gave rise to this adversary proceeding. Debtors sold that home because they could not afford the mortgage payments; yet less than a year after that sale they purchased another home, which may or may not be the source of their current inability to regularly pay the Chapter 13 Trustee. In any event, if Debtors continue their failure to pay the Chapter 13 Trustee, a motion to dismiss will be forthcoming, the bankruptcy case may be dismissed, and this Court may have to dismiss this adversary proceeding as a result. Given Debtors' history of limited success in chapter 13 cases and their record of failing to pay the Chapter 13 Trustee in the present case, the Court believes this case's future is uncertain. The Court finds that this uncertainty renders these Debtors not adequate representatives for class representation.

Because Debtors have failed to establish that the typicality and adequacy of representation requirements of Federal Rule of Civil Procedure 23(a) are satisfied in this case, Debtors' proposed class is not certifiable.[21]

## CONCLUSION

_____

payments in this case.

[21]The Court is aware of the fact that it must go through a "rigorous analysis" of each of the Rule 23(a) requirements before certifying a class. *Gilchrist v. Bolger*, 733 F.2d 1551, 1555 (11th Cir. 1984). However, the Court need not address each of the Rule 23(a) requirements once it has concluded that one or more of these requirements is not satisfied. *See Heng v. Donald*, No. 7:08-CV-5, 2010 WL 497347, at *4 n. 5 (M.D. Ga. February 4, 2010)("As Plaintiffs have not met two of the Rule 23(a) requirements, it is not necessary for the Court to address the [remaining Rule 23(a)] requirements"). Furthermore, the Court need not address Plaintiffs' Rule 23(b)(3) argument once the Court finds that one or more of the Rule 23(a) requirements is not satisfied. *See Almonor v. BankAtlantic Bancorp, Inc.*, 261 F.R.D. 672, 677 n. 9 (S.D. Fla. 2009); *Wright v. Circuit City Stores, Inc.*, 201 F.R.D. 526, 546 (N.D. Ala. 2001).

Case 10-00048-TOM13    Doc 65    Filed 10/21/10    Entered 10/21/10 15:24:30    Desc Main
Document      Page 21 of 22

Based on the foregoing, the Court finds that Debtors' Amended Motion For Class Certification shall be and hereby is **DENIED**.  Dated this the 21st day of October, 2010.

A separate order consistent with this Memorandum Opinion will be entered.


/s/ Tamara O. Mitchell
United States Bankruptcy Judge

TOM: rdt

xc:    Robert Keller and Lange Clark, attorneys for Debtors
Michael Hall, Stephen Bumgarner, and Jennifer Zeimann, attorneys for Ameriquest Mortgage Company and AMC Mortgage Services, Inc.
D. Sims Crawford, Standing Chapter 13 Trustee

22